IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES STANLEY<br>638 4th Street<br>Camden, NJ 08103<br>    and<br>CARL TURNER<br>1143 Empire Avenue<br>Camden, NJ 08103<br><br>        Plaintiff,<br>    v.<br><br>ARUVIL INTERNATIONAL, INC.<br>185 Madison Avenue, Ste. 1701<br>New York, NY 10036<br>    and<br>RUSSELL JENKINS<br>185 Madison Avenue, Ste. 1701<br>New York, NY 10036<br>    and<br>VILAS KULKARNI<br>185 Madison Avenue, Ste. 1701<br>New York, NY 10036<br>    and<br>GARY STYLES<br>6925 Sherman Lane<br>Pennsauken, NJ 08110<br><br>        Defendants. | **CIVIL ACTION**<br><br>**No.:**<br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiffs Carl Turner and James Stanley (hereinafter referred to collectively as "Plaintiffs"), by and through their undersigned counsel, hereby avers as follows:

### I.   Introduction

1.   Plaintiffs have initiated this action to redress violations by Defendants of the Fair Labor Standards Act ("FLSA - 29 U.S.C. § 201 *et. seq.*), 42 U.S.C. § 1981, the New Jersey Wage and Hour Law ("NJ WHL" – N.J.S.A. §§ 34:11-56a, *et seq.*), the New Jersey Wage

Payment Law ("NJ WPL" – N.J.S.A. §§ 34:11-4.1, *et. seq.*), the New Jersey Law against Discrimination ("NJ LAD" - N.J.S.A. 10:5-1 *et. seq.*), and the Conscientious Employee Protection Act ("CEPA" - N.J.S.A. 34:19-1 *et. seq.*). Plaintiffs were not properly paid, they were discriminated against, and they were terminated retaliatorily for engaging in protected activities. As a direct consequence of Defendants' unlawful actions, Plaintiffs seek damages as set forth herein.

## II.   Jurisdiction and Venue

2.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiffs' state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

3.      This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.      Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## III.   Parties

5.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.     Plaintiffs are both adult individuals with addresses as set forth above.

7.     Defendant Aruvil International, Inc. (hereinafter "Defendant Company") is a corporation based in, incorporated within, and headquartered in New York (and thus a citizen, resident and domiciliary of New York State). Defendant Company engages in the business of manufacturing and distributing commercial fencing in many states throughout the United States.

8.     Defendant Vilas Kulkarni (hereinafter "Defendant VK") has and upon information and belief remains an owner, president and the highest-level manager overseeing all operations of Defendant Company.

9.     Defendant Russel Jenkins (hereinafter "Defendant RJ") has and upon information and belief remains a high-level executive performing in numerous capacities including but not limited to Vice President of Defendant Company.

10.    Defendant Gary Stiles (hereinafter "Defendant GS") has and upon information and belief remains an Operations Manager and Regional Sales Manager for Defendant Company.

11.    At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendants.

### IV.     Factual Background

12.    The foregoing paragraphs are incorporated herein as if set forth in full.

13.    Defendant Company is based in New York at the above-captioned address, but it represents publicly that it operates facilities in New York, New Jersey, California, Texas, and

Florida.[1] Regardless of numerical locations, Defendant Company manufactures and distributes various types of fences throughout New Jersey and the United States.

14.     Plaintiffs physically worked for Defendant Company solely within its location at 6925 Sherman Lane, Pennsauken, NJ 08110. At this location, Plaintiffs were directly supervised by Defendant GS.

15.     Plaintiff Stanley was hired by Defendant Company in or about June of 2011, and Plaintiff Turner was hired by Defendant Company in or about November of 2014. Thus, Plaintiffs worked for Defendant Company for approximately 3 years and 6 years respectively.

16.     Plaintiffs were both laborers, working primarily as "warehouse workers." They did labor-intensive work, order picking, operated heavy equipment, forklift driving, loading, unloading and other work as directed or desired by Defendant Company.

17.     Plaintiff Turner was paid a rate of $9.50 per hour for work he performed, and Plaintiff Stanley was paid at a rate of $10.50 per hour for work he performed.

18.     Plaintiffs both worked full-time during their respective tenures with Defendant Company, and they consistently worked substantial overtime (well over 40 hours per week). Indeed, both Plaintiffs often worked in excess of 50 hours per week for Defendant Company.

19.     Defendant Company's management treats employees disparately based upon race, blatantly retaliates against any employees who express concerns of discrimination or illegality, and intentionally fails to abide by local, state and federal wage laws.

20.     In fact, both Plaintiffs were terminated on or about October 30, 2017 and were *expressly told* by Defendant GS per Defendants' higher management, they were being terminated specifically for their intent to file a lawsuit (discussed more *infra*).

---

[1] It is believed based upon research that Defendant Company does not currently operate all facilities as represented publicly at http://www.aruvil.com/contact-us/ but maintains such representations for sales, advertising and image purposes.

21.    Defendants' unequivocal illegal actions are delineated in more detail as follows (in 3 separate categorical summaries):

### (1) Wage Violations

22.    Plaintiffs were not paid for all hours worked, they were not properly paid overtime compensation (at a rate of time and one half for hours worked over 40), and Defendants knowingly and intentionally refused to pay Plaintiffs legally (including through making tax contributions, making legally-mandated withholdings, contributing to Plaintiffs' social security and Medicare, unemployment, and other W-2 payroll accompanying regulations).

### (2) Racial Discrimination

23.    Plaintiffs are both black (African-American) males. Defendants consist of only of non-black ownership and management.

24.    For years (and through termination), Plaintiffs (and other black employees) were denied pay increases, equal pay based upon race and promotions to leads or supervisors.

25.    By way of examples, inexperienced and lesser-qualified, non-black employees such as Mark and Ryan were hired or promoted as supervisors – positions not given to either Plaintiff.  Each time Plaintiffs sought any elevations, pay increases or promotions, they were passed over and given to newly hired and often quite-young, non-black employees.[2]

26.    Additionally, black employees were typically paid at rates of $9.00-$11.00 per hour while non-black employees were paid at higher hourly rates (even as high as $18.00 per hour).

27.    Defendants also treated non-black employees more favorably by disparately paying them legally versus illegally.  By way of example, Plaintiffs were paid "under the table"

---

[2] The individuals referenced herein are only intended to provide examples. Plaintiffs were passed over for lead or supervisory positions on many occasions.

despite many requests by them to have their compensation paid legally and to have contributions they needed made for their benefit (and also due to court verification for child support obligations). They were refused a lawful employee-format of compensation through W-2 continually getting a company check without legally-mandated contributions and withholdings. *See e.g.* 10/12/17 paycheck stub of Stanley, attached hereto as "Exhibit A." Non-black employees on the other hand were often paid in a lawful format with the benefit of contributions to their taxes, to social security, to unemployment and other benefits. *See e.g.* paycheck stub of Rymdeko, attached hereto as "Exhibit B" (that of a non-black employee).[3]

### (3) Retaliation for Complaints of Racial Discrimination Overtime-Wage Violations

28.     Plaintiffs specifically expressed concerns of racial disparities to Defendants' management, including but not limited to Defendants GS and RJ. They expressed concerns of discriminatory pay and promotions within Defendant Company. Instead of any remedy, Plaintiffs were just told by Defendant Company's management if they don't like it, they can leave or find a new job. Such complaints were made over time and in very close proximity to Plaintiffs being terminated.

29.     Plaintiffs specifically expressed concerns of not getting paid for all hours, for all overtime, and for being illegally paid under the table to management, including but not limited to Defendants GS and RJ. Such complaints were made over time and in very close proximity to Plaintiffs being terminated.

30.     From mid-October of 2017 through late October of 2017, Plaintiffs met with legal counsel, and they – within Defendant Company's workplace – discussed with fellow workers

---

[3] Defendants have upon information and belief also been subject to a Department of Labor audit (and/or adverse findings) wherein they have previously assured compliance (but have then failed to comply with wage regulations).

proceeding with a discrimination and wage-violation lawsuit. This escalation of their assertion of legal rights was specifically due to internal complaints and concerns having become futile.

31.     By October 27, 2017, Defendants' ownership and management had become aware of Plaintiffs' intent to file a lawsuit. In becoming aware, between October 27, 2017 through October 30, 2017, Defendants' management began threatening employees that if they participate in any lawsuit they will be terminated.

32.     Defendants <u>cannot deny illegally and retaliatorily terminating Plaintiffs</u> because the very conversations in which they did *so are recorded*.

33.     Between October 27, 2017 through October 30, 2017, Plaintiffs were both specifically threatened by Defendant GS who said *per upper management* including the named Defendants in this case, *Plaintiffs decision to proceed with a lawsuit required him to end their employment*.

34.     Plaintiffs had intended to remain working for Defendants and to sue for numerous wage violations and for racial discrimination they experienced for years. In terminating Plaintiffs, and in recorded conversations, Defendant GS admitted Plaintiffs should have been promoted, that at least one non-black employee was overpaid and operating forklifts *without a license,* and that he felt bad he had to terminate Plaintiffs for deciding to move forward with their lawsuits.

35.     Defendants have no viable defense(s) to any of the foregoing claims, intentional violation of laws, and consistently and systematically operate their business illegally.

**Count I**
**<u>Violations of 42 U.S.C. § 1981</u>**
**(Racial Discrimination & Retaliation)**
**- Against All Defendants -**

36.     The foregoing paragraphs are incorporated herein as if set forth in full.

37.     Plaintiffs seek relief herein based upon the specific adverse actions, as they were: (a) not paid equally based upon race; (b) not elevated or promoted based upon race to lead or supervisory roles; (c) not given pay increases based upon race; and (d) they were expressly terminated for complaining of discrimination and because Defendant learned they were proceeding with a lawsuit for discrimination.

38.     The individual Defendants specifically ignored complaints of discrimination over an extended period of time, perpetuated a discriminatory work environment, and participated in the retaliatory terminations of Plaintiffs.

## Count II
## Violations of the Fair Labor Standards Act ("FLSA")
### (Failure to Pay Overtime Wages & Retaliation)
### - Against All Defendants -

39.     The foregoing paragraphs are incorporated herein as if set forth in full.

40.     At all times relevant herein, Defendants, have and continue to be, an "employer" within the meaning of the FLSA.

41.     At all times relevant herein, Plaintiffs were "employees" within the meaning of the FLSA.

42.     The FLSA requires covered employers, such as Defendants, to minimally compensate their "non-exempt" employees, such as Plaintiff, at a rate of 1.5 times the employee's regular rate of pay for each overtime hour that the employee works (*i.e.* hours in excess of 40 hours in a workweek).

43.     At all times during their employment with Defendants, Plaintiffs were "non-exempt" employees within the meaning of the FLSA (entitling them to overtime pay).

44.     Defendants knew that Plaintiffs were "non-exempt" employees within the meaning of the FLSA.

45.     Defendants failed to fully pay Plaintiffs 1.5 times Plaintiffs' regular rate of pay for each hour that he worked over 40 each workweek.

46.     Plaintiffs were not properly or fully paid for all overtime, and they were expressly terminated by Defendants after repeatedly asking for full wages to be paid and overtime compensation to be fully paid (among other wage concerns).

47.     Plaintiffs' termination from Defendants for complaining of unpaid overtime compensation was *per se* unlawful. *See Kasten v. Saint-Gobain Performance Plastics* Corp., 563 U.S. 1, 131 S. Ct. 1325, 179 L. Ed. 2d 379 (2011)(it is illegal under the FLSA to terminate an employee for verbal or written concerns of unpaid overtime compensation).

48.     The individual Defendants are also personally liable as they directly failed to properly compensate Plaintiff.[4]

## Count III
### Violations of the New Jersey Conscientious Employee Protection Act ("CEPA")
(Retaliatory Termination)
- Against All Defendants -

49.     The foregoing paragraphs are incorporated herein as if set forth in full.

50.     Plaintiff specifically complained of *numerous illegalities*, including but not limited to: (1) unlawful wage violations; (2) unlawful discrimination; and (3) illegal non-payment of overtime compensation; and (4) an illegal scheme of paying them under the table without properly paying them in accordance with regulations governing employee compensation, withholdings and benefits.

---

[4] "[A]n individual is subject to liability when he or she exercises supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation while acting in the employer's interest." *White v. Eberle & Bci Servs.*, 2013 U.S. Dist. LEXIS 7542 (D.N.J. 2013); *see also Narodetsky v. Cardone Indus., Inc.*, 2010 U.S. Dist. LEXIS 16133, 2010 WL 678288 (E.D. Pa. 2010)(management may be individually liable under the FLSA for involvement in payroll and/or adverse actions with employment).

51.     Plaintiffs were expressly terminated for the aforesaid protected activities, and their terminations therefore constitute violations of the CEPA.

### Count IV
### Violations of the New Jersey Law Against Discrimination ("NJ LAD")
### (Racial Discrimination & Retaliation)
### - Against All Defendants -

52.     The foregoing paragraphs are incorporated herein as if set forth in full.

53.     Plaintiffs seek relief herein based upon the specific adverse actions, as they were: (a) not paid equally based upon race; (b) not elevated or promoted based upon race to lead or supervisory roles; (c) not given pay increases based upon race; and (d) they were expressly terminated for complaining of discrimination and because Defendant learned they were proceeding with a lawsuit for discrimination.

54.     The individual Defendants specifically ignored complaints of discrimination over an extended period of time, perpetuated a discriminatory work environment, and participated in the retaliatory terminations of Plaintiffs.

### Count V
### New Jersey Wage and Hour Law (NJ "WHL")
### (Unpaid Overtime Compensation)
### - Against All Defendants -

55.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

56.     Plaintiffs were not paid for all overtime worked, and thus Defendants violated

57.     These actions as aforesaid constitute violations of the NJ WHL.

**Count VI**
**Violations of the New Jersey Wage Payment Law ("NJ WPL")**
**(Failure to Pay Owed Wages)**
**- Against All Defendants -**

58.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

59.      Plaintiff were not paid for all hours worked, had improper deductions taken, and were shorted earned income a continued basis. As a direct and proximate cause of Defendants' illegal pay practices, Plaintiffs are owed (in addition to unpaid wages): all legally-mandated contributions to unemployment, social security, Medicare and other losses suffered on account (including but not limited to their tax contributions).

60.      Defendants' actions as aforesaid constitute violations of the NJ WPL.

**WHEREFORE,** Plaintiff prays that this Court enter an Order providing that:

A.      Defendants are to compensate Plaintiffs, reimburse Plaintiffs and make Plaintiffs whole for any and all pay and benefits Plaintiffs would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings and any other owed compensation. Plaintiffs should be accorded those benefits illegally withheld from the date they first suffered legal violations at the hands of Defendants until the date of verdict;

B.      Plaintiffs are to be awarded punitive or liquidated (or other penalty) damages, as permitted by applicable law, in an amount determined by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future (and to compensate Plaintiff for lost use of income);

C.      Plaintiffs are to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate, including but not limited to, emotional distress and/or pain and suffering damages (where legally permitted);

D.      Plaintiffs are to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

E.      Any verdict in favor of Plaintiffs is to be molded by the Court to maximize the financial recovery available to the Plaintiffs in light of the caps on certain damages set forth in applicable federal law; and

F.      Plaintiff's claims are to receive trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).


Respectfully submitted,

KARPF, KARPF & CERUTTI, P.C.

By:      _____

Ari R. Karpf
3331 Street Road
Two Greenwood Square
Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: November 13, 2017

# Exhibit A

Detach stub before depositing 10/12/2017

Aruvil International Inc.  12.14.1292 112213

| Date | Invoice No | Description | Detail Description | Amount | Detail Amt. | Terms Amt. | Net Amt. | Disputed Amt. | Adjusted Amt. |
|------|-----------|-------------|--------------------|--------|-------------|------------|----------|---------------|---------------|
| 10/10/2017 | 100817 | PAYROLL 9/25-10/8 | | 852.29 | | 0.00 | 852.29 | 0.00 | 852.29 |
| CHECK 008028 TOTALS FOR PAYEE JAMES EDWARD STANLEY | | | | $852.29 | | $0.00 | $852.29 | $0.00 | $852.29 |

# Exhibit B

THE FACE OF THIS DOCUMENT CONTAINS MICROPRINTING · THE BACKGROUND COLOR CHANGES GRADUALLY AND EVENLY FROM DARKER TO LIGHTER WITH THE DARKER

ARUVIL INTERNATIONAL INC
PBS OF CENTRAL FLORIDA LLC
970 LAKE CARILLON DRIVE SUITE 400
SAINT PETERSBURG FL 33716

2000-6972
ORG1:5 5
EE ID: 72      DD

| 10/12/2017 | 124 |
|---|---|
| DATE | CHECK NO. |

·PAY TO THE
ORDER OF

RYAN J RYMDEKO
2092 HEATHER RD
FOLCROFT PA  19032

Total Net Direct Deposit(s)
**$1192.82**

AMOUNT

VOID THIS IS NOT A CHECK ........................................... DOLLARS

**NON-NEGOTIABLE**
AUTHORIZED SIGNATURE(S)

*Payrolls by Paychex, Inc.*

TO VERIFY AUTHENTICITY OF THIS DOCUMENT THE BACK CONTAINS HEAT SENSITIVE INK THAT CHANGES FROM BLUE TO CLEAR AND ALSO CONTAINS AN ARTIFICIAL WATERMARK WHICH CAN BE VIEWED WHEN HELD AT AN ANGLE

FOLD AND REMOVE                                    FOLD AND REMOVE

**PERSONAL AND CHECK INFORMATION**
Ryan J Rymdeko
2092 Heather Rd
Folcroft, PA  19032
Soc Sec #: xxx-xx-xxxx     Employee ID: 72

Home Department: 5 5

Pay Period: 09/25/17 to 10/08/17
Check Date: 10/12/17     Check #: 124

**NET PAY ALLOCATIONS**

| DESCRIPTION | THIS PERIOD ($) | YTD ($) |
|---|---|---|
| Check Amount | 0.00 | 0.00 |
| Chkg 6985 | 1192.82 | 19293.76 |
| **NET PAY** | **1192.82** | **19293.76** |

| EARNINGS | DESCRIPTION | HRS/UNITS | RATE | THIS PERIOD ($) | YTD HOURS | YTD ($) |
|---|---|---|---|---|---|---|
| | Hourly | 76.50 | 18.0000 | 1377.00 | 1366.50 | 22593.25 |
| | Overtime | 4.50 | 27.0000 | 121.50 | 137.75 | 3332.07 |
| | Holiday | | | | 16.00 | 288.00 |
| | Sick | 8.00 | 18.0000 | 144.00 | 16.00 | 288.00 |
| | **Total Hours** | 89.00 | | | 1536.25 | 1 |
| | **Gross Earnings** | | | 1642.50 | | 26501.32 |
| | **Total Hrs Worked** | 81.00 | | | | |

| WITHHOLDINGS | DESCRIPTION | FILING STATUS | THIS PERIOD ($) | YTD ($) |
|---|---|---|---|---|
| | Social Security | | 101.83 | 1643.08 |
| | Medicare | | 23.82 | 384.27 |
| | Fed Income Tax | MWS 0 +$20 | 244.62 | 3898.84 |
| | NJ Income Tax | Exempt | | |
| | NJ Disability | | 5.58 | 90.09 |
| | NJ Unemploy | | 6.28 | 101.37 |
| | NJ EE Work Dev | | 0.70 | 11.28 |
| | PA Income Tax | | 50.42 | 813.58 |
| | PA FOLCR-Del In | | 16.43 | 265.05 |
| | **TOTAL** | | 449.68 | 7207.56 |

| | | THIS PERIOD ($) | YTD ($) |
|---|---|---|---|
| **NET PAY** | | **1192.82** | **19293.7** |

*Payrolls by Paychex, Inc.*

**0741 2000-6972**    Aruvil International Inc · PBS Of Central Florida LLC · (212) 447-5020 · 970 Lake Carillon Drive Suite 400 · Saint Petersburg FL  33716